UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MOTOROLA, INC., a Delaware Corporation,

              Plaintiff,

    v.

GAD ABECKASER A/K/A GADI ABECKASER,
GADI'S CELL, INC. D/B/A GADICELL, INC.,
AND GADICELL, GADIS INC., MOBILE
CELLULAR, INC., VARIOUS JOHN DOES,
JANE DOES AND ABC COMPANIES,

              Defendants.

------------------------------------------------------------------x

Civil Action No.: 07-3963 (CPS)

## DECLARATION OF EDDY SALCEDO, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**EDDY SALCEDO, ESQ.**, under penalty of perjury declares and states that the following is true and correct:

1. I am an associate with the law firm of Seyfarth Shaw LLP, attorneys for plaintiff Motorola, Inc. ("Motorola" or "Plaintiff") in this action. I am a member in good standing and am admitted to practice before, among others, the Courts of the State of New York and the Southern and Eastern Districts of New York. I know the facts testified to in this Declaration to be true based on my own personal knowledge and a review of the documents described below. I make this Declaration under the penalty of perjury.

2. I submit this Declaration in support of Motorola's present motion for partial summary judgment pursuant to Fed. R. Civ. P. 56. By this motion Motorola seeks summary judgment with respect to Counts I and II of the Complaint, which sets forth causes of action against Defendants for counterfeiting and infringement of Motorola's rights under 15 U.S.C.

§1114, and 15 U.S.C. §1125(a) and hereby requests statutory damages be awarded pursuant to 15 U.S.C. §1117(c)(1) and (2) as a result of Defendants' sale of goods bearing counterfeit copies of Motorola's Trademarks (defined below). A copy of the Complaint is annexed hereto as Exhibit "A."[1]

3. In further support of this motion, annexed hereto as Exhibits "C" and "D" respectively are copies of the Declaration of David Lukasik, dated September 28, 2007 (the "Lukasik Dec."), and the Affidavit of David Lukasik, sworn to on August 31, 2007 (the "Lukasik Affidavit"). The Lukasik Dec. was previously submitted to the Court at the commencement of this action, and the Lukasik Affidavit was submitted to the New York Police Department in support of its investigation of Defendants' business activities, as described more fully herein. Motorola respectfully refers the Court to both documents.

4. As set forth below, Defendants have sold unlicensed and unauthorized merchandise bearing unauthorized duplications of one or more of the Motorola Trademarks (hereinafter "Counterfeit Merchandise").

5. Specifically, Defendants sold large quantities of five types of goods bearing counterfeit reproductions of Motorola's Trademarks: (a) cellular headsets, each bearing one (1) counterfeit mark; (b) cellular telephones, each bearing two (2) counterfeit marks; (c) cellular telephone chargers, each bearing one (1) counterfeit mark; (d) mobile phone tools software CD ROMS, each bearing two (2) counterfeit marks; and (e) counterfeit packaging inserts, each bearing two (2) counterfeit marks.

---

[1] Annexed as Exhibit "B" hereto is a copy of Defendants' Answer.

6. There exist no questions of fact as to the Defendants' sale of the Counterfeit Merchandise, nor as to the validity of Motorola's Trademarks.

7. Therefore, for the reasons elucidated herein, and in the accompanying Memorandum of Law, it is respectfully submitted that judgment should be entered as against Defendants, and in favor of Motorola, on Counts I and II of the Complaint, and that statutory damages be awarded to Motorola pursuant to 15 U.S.C. §1117(c)(1)

## MOTOROLA IS ENTITLED TO THE RELIEF REQUESTED

**The Motorola Trademarks**

8. For many years, Motorola has used the word trademark MOTOROLA® and design trademark comprised of a STYLIZED M Design ® ® (collectively the "Motorola Trademarks") continuously on, and in connection with, the design, manufacture and/or sale of, *inter alia*, mobile communication devices and accessories in interstate commerce.

9. The Motorola Trademarks are registered on the Principal Register of the United States Patent and Trademark Office for multiple goods, including:

| Trademark | Registration Number |
| --- | --- |
| MOTOROLA | 717,485 in International Class 9<br>Registered June 27, 1981 |
| MOTOROLA and STYLIZED M Design | 1,680,185 in International Class 9<br>Registered March 24, 1992 |
| STYLIZED M Design | 1,674,103 in International Classes 9<br>Registered February 4, 1992 |

10. Photocopies of the registration records of the United States Patent and Trademark Office for these Motorola Trademarks are annexed to the Complaint, as well as Exhibit "E" hereto, for the Court's convenience.

11. Motorola is the owner of the Motorola Trademarks represented by the above registrations. All of these registrations are valid, subsisting, and in full force and effect. In addition, all of these registrations have become incontestable pursuant to 15 U.S.C. § 1065.

12. Motorola maintains strict control over the nature and quality of merchandise bearing the Motorola Trademarks.

13. Merchandise designed, manufactured and/or sold by Motorola and bearing one or more of the Motorola Trademarks (hereinafter "Authorized Merchandise") has been advertised and sold throughout the United States and within the State of New York and this District.

**Defendants' Sale of Goods Bearing Counterfeit Marks[2]**

14. In or about late 2006, Motorola became aware that Defendants were selling Counterfeit Merchandise, and began an investigation into Defendants business practices.

15. As Motorola's investigation was ongoing, on March 6, 2007, U.S. Customs and Border Protection ("U.S. Customs") sent notice to Defendants that U.S. Customs had seized merchandise imported by Defendants which bore counterfeit Motorola Trademarks. Motorola was also made aware of the seizure by U.S. Customs. A copy of is annexed hereto as Exhibit F.

---

[2] The Court is also respectfully referred to the Lukasik Dec. for a recitation of these facts.

16. The U.S. Customs notice specifically referenced the seizure of: (a) 1029 Manuals; (b) 1087 Boxes, (c) 100 Liners; (d) 99 Power Cords [chargers]; (99) Data Cables and (99) Software [CD ROMS], bearing counterfeit Motorola Trademarks. Exhibit F.

17. On March 29, 2007, DHL Express sent notice to Defendants regarding the seizure. A copy of the DHL Express notice is annexed to the U.S. Customs letter, Exhibit F hereto.

18. In light of the result of its investigation and the seizure made by U.S. Customs, on May 23, 2007, Plaintiff sent a cease and desist letter to Defendant Gad Abeckaser, directing that Defendants immediately cease and desist from importing, offering for sale and selling merchandise bearing counterfeit Motorola Trademarks (the "Cease and Desist Letter"). Defendant Gad Abeckaser personally signed for the receipt of the Cease and Desist Letter on May 24, 2007. A copy of the Cease and Desist Letter, together with the proof of service thereof, is annexed hereto as Exhibit "G."

19. Despite the notice from U.S. Customs and the Cease and Desist Letter, on or about June 13, 2007 and August 30, 2007,[3] several items were purchased from Gadi's Cell, Inc. a/k/a Gadicell, Inc., by members of the Organized Crime Investigation Department of the New York City Police Department. Upon examination the items were determined to bear counterfeit duplications of the STYLIZED M Design ® directly on the products, and counterfeit duplications of the MOTOROLA® word mark and the STYLIZED M Design mark on the packaging for the products.

---

[3] See Lukasik Affidavit, Exhibit D, hereto.

20. On September 5, 2007, based on, among other things, the counterfeit merchandise purchased in June and August, search warrants were issued and thereafter executed at the 159 42nd Street, Brooklyn, NY 11232, and 4202 Third Avenue, Brooklyn, NY 11232, business locations for Defendants.

21. At these locations, the New York City Police Department confiscated, among other things, more than 4,000 headsets and 360 cell phones bearing or packaged with counterfeit duplications of the of the STYLIZED M Design ® and MOTOROLA ® marks and, more than 62,000 counterfeit packaging inserts bearing counterfeit duplications of the STYLIZED M Design ® and MOTOROLA ® marks (Motorola does not sell its packaging inserts separately). Annexed hereto as Exhibit "H" is a copy of the log of items confiscated prepared by the New York Police Department, together with pictures of the items seized.

22. The retail value of the counterfeit merchandize seized was in excess of $500,000.

23. If all of the 62,000 counterfeit packaging inserts were affixed to and sold with cellular telephone headsets, the retail value of the products would be more than $5,000,000. Annexed as Exhibit "I" hereto is a photograph of the counterfeit packaging inserts being offered for sale by Defendants, in tandem with the cellular telephone headsets, confiscated by the New York Police Department.

24. As set forth in the Lukasik Dec., during the execution of the search warrants, the New York City Police Department and Mr. Lukasik witnessed that the Defendants were operating an assembly line and warehouse facilities for creating counterfeit duplications of the Motorola Marks, systematically placing same on, among other things, packaging inserts for headsets and cell phones, in addition to packaging counterfeit headsets and cell phones.

25. Defendants' sales records, obtained during the execution of the search warrants, show that Defendants' issued invoices for $1,178,590 in March 2007, a period of time when Defendants' are known to have been selling counterfeit Motorola merchandise. Annexed hereto as Exhibit "J" is a tally of these invoices.

26. Other invoices obtained during the execution of the search warrants also demonstrate that Defendants were selling, and offering for sale, the counterfeit packaging inserts individually, together with the packaging, separate and apart from any cellular equipment. Annexed as Exhibit "K" hereto are copies of representative invoices evidencing Defendants' sales of the counterfeit packaging inserts.

27. Based on Plaintiff's investigation and the New York Police Department investigation, it is apparent that Defendants have engaged in a substantial wholesale counterfeiting enterprise selling counterfeit Motorola merchandise, as well as counterfeit packaging for Motorola merchandise.[4]

28. Two employees of Defendants were arrested on September 5, 2007, for the sale of the counterfeit merchandise.[5]

29. This action followed shortly thereafter.

---

[4] Defendant Abeckaser's individual involvement in Defendants' counterfeiting enterprise is further made salient by the fact that several of the invoices evidencing sales of counterfeit Motorola merchandise were issued from Mr. Abeckaser's personal residence, 1082 East 29th Street, Brooklyn, New York, and list Mr. Abeckaser as the "salesperson" (see, Exhibit "L" hereto). Mr. Abeckaser identified this location as his personal residence in paragraph 4 of the Stipulation, identified, *infra*.

[5] We are informed by the Queens County District Attorneys office that Defendant Abeckaser has recently been indicted for the sale of the counterfeit Motorola merchandise as well.

## The Complaint and Defendants' Continued Conduct

30. Motorola commenced the instant action by the Complaint, and immediately sought an *ex parte* temporary restraining order and order restraining Defendants' assets (the "Initial Motion").

31. By the Complaint, Motorola alleged three causes of action as against the Defendants arising out of Defendants sales of the Counterfeit Merchandise: (a) counterfeiting and willful infringement in violation of Motorola's rights to the Motorola Trademarks under 15 U.S.C. §1114; (b) unfair competition under 15 U.S.C. §1125(a); and (c) unfair competition under the common law of the State of New York. The relief sought by the Initial Motion arose out of Defendants' continued offer of sales of the Counterfeit Merchandise.

32. By Stipulation dated October 3, 2007 (the "Stipulation"), Motorola withdrew its initial motion and Defendants agreed to, *inter alia*: (a) refrain from, in any way: using Motorola's Trademarks or any reproduction, counterfeit, copy or colorable imitation of Motorola's Trademarks in connection with the manufacture, distribution, importation, exportation, advertising, offer for sale and/or sale of merchandise not the genuine products of Motorola; (b) refrain from shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner apparel or other items falsely bearing Motorola's Trademarks, or any reproduction, counterfeit, copy or colorable imitation of same; and (c) provide Motorola with complete access to all warehouses, store locations, storage locations and/or offices for the inspection of Defendants' business records and to inventory of merchandise. See, Exhibit "M" hereto.

33. On October 30, 2007, Motorola conducted the inspection of Defendants' business locations at 202 3rd Avenue, Brooklyn New York and 159 42nd Street Brooklyn, New York, called for in the Stipulation. Your declarant was present at this inspection together with Mr. Lukasik.

34. During the inspection, the following types of merchandise, bearing counterfeit duplications of the of the STYLIZED M Design ® and MOTOROLA ® marks were found being offered for sale and in Defendants' possession: (a) counterfeit packaging inserts bearing counterfeit duplications of the Motorola Trademarks; (b) Mobile Phone Tools computer CD ROMS; and (c) quick-start cellular phone chargers. Pictures of these additional pieces of Counterfeit Merchandise are annexed hereto as Exhibit "N."

**<u>Motorola is Entitled to the Maximum Statutory Damages Available</u>**

35. Pursuant to 15 U.S.C. §1114:

(1) Any person who shall, without the consent of the registrant--

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

36. Furthermore, 15 U.S.C. §1125(a) states, in pertinent part:

"(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person..."

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

37. With respect to the damages available to a plaintiff in circumstances, such as the present case, involving violations under 15 U.S.C. §1114 and/or 15 U.S.C. §1125(a), 15 U.S.C. §1117(c) states, in pertinent part:

"In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."

38. Finally, 15 U.S.C. §1116(d) states, in pertinent part:

"(d) Civil actions arising out of use of counterfeit marks

\* \* \*

(B) As used in this subsection the term "counterfeit mark" means--

(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or

(ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36..."

39. In the instant action, as set forth above, it is indisputable that Defendants knowingly and willfully purchased, possessed, sold, and offered for sale, five (5) types of goods, with a varying one (1) to two (2) counterfeit duplicate marks per good, specifically: (a) cellular headsets, each bearing one (1) counterfeit mark; (b) cellular telephones, each bearing two (2) counterfeit marks; (c) cellular telephone chargers, each bearing one (1) counterfeit mark; (d) mobile phone tools software CD ROMS, each bearing two (2) counterfeit marks; and (e) counterfeit packaging inserts, each bearing two (2) counterfeit marks. Photographs demonstrating the counterfeit marks are annexed hereto as Exhibit "O."

40. The Counterfeit Merchandise bears counterfeit marks identical with the Motorola Trademarks.

41. The Counterfeit Merchandise was seized by the NYPD, and additional Counterfeit Merchandise was found by Motorola during the voluntary inspection, as set forth above.

42. Defendants actions were willful in that Defendants certainly knew and were aware that they had sold Counterfeit Merchandise in the past and did not have Motorola's permission to sell the Counterfeit Merchandise. In addition, the counterfeit packaging and

labels for the counterfeit CD-ROMs were clearly manufactured by or for Defendants and there is no question that they were not made or authorized by Motorola. Defendants, despite notices from U.S. Customs, DHL Express, and Motorola continued to sell and offer for sale the Counterfeit Merchandise.

43. Almost two months after the seizure by the NYPD, and one month after signing the Stipulation, Motorola found Defendants to still be in possession of, and offering for sale, Counterfeit Merchandise.

44. As such, and as noted in Paragraph 39 above, Motorola has demonstrated that Defendants sold and offered for sale five (5) separate types of goods bearing a total of eight (8) counterfeit Motorola marks under 15 U.S.C. §1117(c)(1) and (2).

45. Therefore, it is respectfully submitted that Motorola is entitled to summary judgment, as against Defendants, on Counts I and II of the Complaint and an award of statutory damages pursuant to 15 U.S.C. §1117(c)(1) and (2) in an amount to be determined by the Court. With regard to the amount of the statutory damages to be awarded, Motorola respectfully submits to the Court that Defendants' behavior rises to the level of willful and that the maximum amount, per counterfeit mark per type of good, should be awarded, to wit, $16,000,000 for the eight (8) counterfeit marks.

Dated: January 21, 2009
       New York, New York

                                      Eddy Salcedo

NY1 26547530.3