UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MOTOROLA, INC., a Delaware Corporation,  :

        Plaintiff,  :

      v.  :

GAD ABECKASER A/K/A GADI ABECKASER,  :
GADI'S CELL, INC. D/B/A GADICELL, INC.,  :
AND GADICELL, GADIS INC., MOBILE  :
CELLULAR, INC., VARIOUS JOHN DOES,  :
JANE DOES AND ABC COMPANIES,  :

        Defendants.  :

-----------------------------------------------------------------x

**ECF Case**

Civil Action No.: 07-3963 (CPS)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Of Counsel:

Eddy Salcedo, Esq. (ES-3391)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Bart A. Lazar, Esq. (BL-7984)
SEYFARTH SHAW LLP
131 S. Dearborn
Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5986

*Attorneys for Plaintiff Motorola, Inc.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION/SUMMARY OF ARGUMENT ...................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 4

I.    The Motorola Trademarks ............................................................................................ 4

II.   Defendants' Offer for Sale and Sale of Counterfeit Merchandise ............................... 5

ARGUMENT ......................................................................................................................... 6

I.    There is No Genuine Dispute that Defendants Have Sold Counterfeit Motorola
      Merchandise ................................................................................................................ 6

      A.    The Evidence of Counterfeiting and Trademark Infringement is
            Indisputable ...................................................................................................... 7

            1.    Plaintiff's Trademarks Are Valid, Protectable Marks ............................... 8

            2.    Defendants Used Counterfeit Copies of the Motorola Marks ................... 8

            3.    Defendants' Use of the Motorola Marks on Counterfeit
                  Merchandise was Without Motorola's Consent ......................................... 9

            4.    Defendants' Use of Counterfeit Marks was Likely to Cause
                  Confusion ................................................................................................. 9

II.   Motorola is Entitled to a Permanent Injunction ......................................................... 11

III.  Motorola Is Entitled To Maximum Statutory Damages For Defendants' Willful
      Conduct ...................................................................................................................... 12

IV.   Motorola is Entitled to its Costs and Reasonable Attorneys' Fees ............................ 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...................................................................................................6

Bambu Sales, v. Sultana Crackers,
    683 F. Supp. 899 (E.D.N.Y. 1988) ..........................................................................11

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................................................6

Chanel, Inc. v. French,
    2006 U.S. Dist. LEXIS 93297 (S.D. Fla. Dec. 22, 2006) ........................................15

Gallo v. Prudential Residential Servs., Ltd. P'ship,
    22 F.3d 1219 (2d Cir. 1994).......................................................................................6

Grunner + Jahr USA Publ'g v. Meredith Corp.,
    991 F.2d 1072 (2d Cir. 1993).....................................................................................7

Gucci America, Inc. v. Duty Free Apparel, Ltd.,
    315 F. Supp. 2d 511(S.D.N.Y. 2004)..................................................................12, 14

Gucci America, Inc. v. Duty Free Apparel, Ltd.,
    286 F.Supp.2d 284(S.D.N.Y. 2003).........................................................................12

Hermes v. Kiernan,
    2008 U.S. Dist LEXIS 70506 (E.D.N.Y. 2008)........................................................8

In re Vuitton et Fils S.A.,
    606 F.2d 1 (2d Cir. 1979)...........................................................................................9

Johnson & Johnson v. Aini,
    540 F. Supp. 2d 374 (E.D.N.Y. 2008) ...................................................................6, 7

Kepner-Tregoe, Inc. v. Vroom,
    186 F.3d 283 (2d Cir. 1999)..................................................................................8, 16

L.B. Foster Co. v. America Piles, Inc.,
    138 F. 3d (2d Cir. 1998).............................................................................................6

Lorillard Tobacco Company, v. Jamelis Grocery, Inc.,
    378 F. Supp. 2d 448 (S.D.N.Y 1995).................................................................9, 12

ii

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
   454 F.3d 108 (2d Cir. 2006)......................................................................................................7

Microsoft Corporation v. Aga Solutions, Inc.
   2008 WL 5054694 (E.D.N.Y. Nov. 21, 2008)..........................................................................6

Monsanto Co v. Haskel Trading, Inc.,
   13 F. Supp.2d 349 (E.D.N.Y 1998) ......................................................................................10

Morningside Group Ltd. v. Morningside Capital Group, L.L.C,
   182 F.3d 133 (2d Cir. 1999).....................................................................................................7

Nike, Inc. v. Top Brand,
   2006 U.S. Dist. LEXIS 76543 (S.D.N.Y Feb. 27, 2006)...................................................14, 16

Phillip Morris USA Inc v Marlboro Express
   2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005)..........................................12, 13, 14

Polaroid Corp. v. Polaroid Elecs. Corp.,
   287 F.2d 492 (2d Cir. 1961).....................................................................................................9

Procter & Gamble v. Quality King,
   123 F. Supp. 2d 108 (E.D.N.Y 2000) ....................................................................................10

Sara Lee Corporation v. Bags of New York,
   36 F.Supp.2d 161 (S.D.N.Y. 1999) .......................................................................................13

Tanning Research Laboratories, Inc. v. Worldwide Import & Export,
   803 F. Supp. 606 (E.D.N.Y 1992) ....................................................................................8, 14

United National Ins. Inc. v. The Tunnel, Inc.,
   988 F.2d 351 (2d Cir. 1993).....................................................................................................6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

MOTOROLA, INC., a Delaware Corporation,

                Plaintiff,

      v.

GAD ABECKASER A/K/A GADI ABECKASER,
GADI'S CELL, INC. D/B/A GADICELL, INC.,
AND GADICELL, GADIS INC., MOBILE
CELLULAR, INC., VARIOUS JOHN DOES,
JANE DOES AND ABC COMPANIES,

                Defendants.

------------------------------------------------------------------x

Civil Action No.: 07-3963 (CPS)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION/SUMMARY OF ARGUMENT

Motorola, Inc. ("Plaintiff"), by and through its undersigned counsel, submits this Memorandum of Law in support of its motion for summary judgment on Counts I and II of its complaint dated September 21, 2007 (the "Complaint"), against GAD ABECKASER A/K/A GADI ABECKASER, GADI'S CELL, INC. D/B/A GADICELL, INC., AND GADICELL and MOBILE CELLULAR, INC., (collectively, hereinafter, "Defendants"), based on their undisputed transactions in counterfeit Motorola merchandise in violation of the Federal Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended (the "Lanham Act").

As set out in detail below and in the Declaration of David Lukasik dated September 28, 2007, filed previously in this action (the "Lukasik Dec.") and the Declaration of Eddy Salcedo, Esq. dated January 21, 2009, filed herewith (the "Salcedo Dec."), two of Defendants' locations were the subject of search warrants executed by the New York Police Department ("NYPD") on

September 5, 2007. These search warrants were executed after the service of a cease and desist letter on Defendants, which Mr. Abeckaser personally received and an extensive investigation conducted by the NYPD involving multiple purchases from Defendants in which Defendants sold NYPD officers many items of counterfeit Motorola merchandise. In executing those search warrants the police, and Mr. Lukasik, a Motorola representative present for the execution at the request of the NYPD, observed evidence of a substantial counterfeiting enterprise involving the wholesale distribution of counterfeit Motorola merchandise and the manufacture of counterfeit Motorola packaging. The NYPD seized counterfeit Motorola merchandise valued at over $500,000, including more than 4,000 cellular telephone headsets and 62,000 counterfeit packaging inserts, which were ready for use in packaging headsets with a market value of more than $5,000,000. Lukasik Dec. ¶ 7. (Photographs of examples of these items are annexed to the Salcedo Dec. as Exhibit H, and originals can be made available to the court for inspection).

Defendant, Gad Abeckaser, and his businesses, were well aware that they had been selling counterfeit Motorola merchandise. Motorola sent Gadicell, Inc. a cease and desist letter to Mr. Abeckaser's home address, which also served as one of Gadicell, Inc.'s business addresses, and Mr. Abeckaser signed for the letter on May 24, 2007. Salcedo Dec. ¶16. Moreover, on several occasions, Defendants received notices that United States Customs had seized counterfeit Motorola merchandise being imported by Defendants Salcedo Dec. ¶15.

While willfulness is not necessary to establish trademark counterfeiting, trademark infringement and unfair competition under the Lanham Act, Motorola can demonstrate without any dispute that Defendants intentionally manufactured counterfeiting packaging by printing the Motorola Marks on the packaging, knew or should have known that they were selling counterfeit merchandise, or had reckless disregard for Motorola's rights or were willfully blind to their sale

of Counterfeit Merchandise after receiving a cease and desist letter and U.S. Customs seizure notices and/or stipulating to a preliminary injunction in this action -- any one of these alone would be sufficient for Motorola to obtain enhanced statutory damages for willful infringement under the Lanham Act.

Defendants' businesses engaged in the sale of substantial quantities of counterfeit Motorola merchandise for a significant period of time. Motorola first made a purchase of counterfeit Motorola headsets through Mr. Abeckaser in November 2006. Salcedo Dec. ¶14. Motorola confirmed that subsequent purchases made by NYPD were counterfeit in June and August 2007, in addition to confirming that the items seized in on September 5, 2007 were counterfeit. Moreover, documents seized from Defendants on September 5, 2007 indicated that Defendants were engaged in selling more than $1,100,000 in merchandise just in the month of March 2007, alone. A later inspection of Defendants' premises on October (after the entry of a stipulated preliminary injunction) located additional counterfeit Motorola merchandise, including CD-ROMs containing computer software. Salcedo Dec. ¶32.

As a result of Motorola's and NYPD's investigation, there can be no genuine material dispute of fact that Defendants, without Plaintiff's consent or authorization, have used unauthorized reproductions and counterfeit copies of the Motorola Trademarks in connection with Defendants' manufacturing, advertising, distributing, exporting, importing, offering for sale and/or selling of merchandise and packaging falsely bearing Motorola's Trademarks (the "Counterfeit Merchandise") through various locations in Brooklyn, as well as over the Internet. Based on the notice that Defendants have been provided, there can also be no genuine material dispute that Defendants' conduct was willful.

Defendants have willfully offered to sell and sold wholesale quantities of Counterfeit Merchandise, including counterfeit cellular telephones and parts thereof, counterfeit headsets, counterfeit computer software for cell phones, counterfeit mobile cell phone chargers, counterfeit automobile chargers and counterfeit packaging, See Lukasik Dec. ¶7. Defendants' disregard of Motorola's Trademarks has caused irreparable and actual harm to Plaintiff, Motorola's Trademarks, Plaintiff's reputation and goodwill, and Plaintiff's rightful market position based upon its sale genuine Motorola products bearing the Motorola Trademarks ("Authorized Merchandise").

In view of the foregoing, Plaintiff, respectfully requests that this Court grant it: (i) summary judgment on Count I of the Complaint against the Defendants; (ii) grant it an award of statutory damages pursuant to 15 U.S.C. §1117(c)(1) in the amount of $16,000,000; and (iii) award of its costs and reasonable, attorneys' fees, and (iv) a permanent injunction.

## FACTUAL BACKGROUND

### I.    The Motorola Trademarks.

Motorola is a Fortune 100 global communications leader that had sales of US $35.3 billion in 2005. (Lukasik Dec. ¶3). Some of the well-known MOTOROLA® merchandise ("Authorized Merchandise") includes high quality mobile communication devices such as cellular telephones and headsets. (Lukasik Dec. ¶3).

Motorola has obtained several federal trademark registrations for the Motorola Trademarks, including the term MOTOROLA and Motorola's STYLIZED M Design. Copies of relevant Motorola Registrations are annexed as Exhibit 1 to the complaint in the action (the

"Complaint"). Motorola is the owner of each of the trademarks in the Motorola Registrations, which are valid, subsisting, and in full force and effect.

Over the years, Motorola has enjoyed commercial success by designing, developing, manufacturing and marketing an extensive line of Authorized Merchandise. (Lukasik Dec. ¶4-5). Consumers understand that the Motorola Trademarks identify the source of MOTOROLA products. (Lukasik Dec. ¶5).

## II.    Defendants' Offer for Sale and Sale of Counterfeit Merchandise.

As stated, *supra*, as well as in the Lukasik Dec. and Salcedo Dec., and the Exhibits attached thereto, Defendants have imported, manufactured, packaged, offered for sale and sold Counterfeit Merchandise at both retail and wholesale levels through various physical locations in Kings and New York County, and both retail sales and wholesale over the Internet via, *inter alia*, eBay.com. Annexed as Exhibit C to the Lukasik Dec. are invoices showing the extent of sales, the amount of product secured by the NYPD, demonstrating the extent of Defendants' business. Because of the clandestine nature of Defendants' business and disorganized business records, Motorola cannot fully demonstrate the extent of Defendants' sale of Counterfeit Merchandise, however, the items seized on September 5 had a market value in excess of $500,000, and the packaging seized could be used to sell over $5,000,000 in Counterfeit Merchandise, and what little records Defendants possessed showed between $500,000-$1,000,000 in sales per month. Lukasik Dec. ¶9.

On October 30, 2007 (after Defendants stipulated to a preliminary injunction against transacting business in Counterfeit Merchandise. Motorola conducted the inspection of Defendants' business locations at 202 3rd Avenue, Brooklyn New York and 159 42nd Street

5

Brooklyn, New York. Salcedo Dec. ¶33. During the inspection, Motorola found additional Counterfeit Merchandise, namely: (a) counterfeit packaging inserts bearing counterfeit duplications of the Motorola Trademarks; (b) Mobile Phone Tools computer CD ROMS; and (c) quick-start cellular phone chargers. Salcedo Dec. ¶34.

## ARGUMENT

**I.    There is No Genuine Dispute that Defendants Have Sold Counterfeit Motorola Merchandise.**

Summary judgment is a "tool to winnow out from the trial calendar those cases whose facts predestine them to a directed verdict." United National Ins. Inc. v. The Tunnel, Inc., 988 F.2d 351, 355 (2d Cir. 1993). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if the evidence, as viewed in the light most favorable to the nonmoving party, is such that a jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), L.B. Foster Co. v. America Piles, Inc., 138 F. 3d 81, 87 (2d Cir. 1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Johnson & Johnson v. Aini, 540 F. Supp. 2d 374, 383 (E.D.N.Y. 2008), *citing* Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (granting summary judgment for willful trademark infringement); Microsoft Corporation v. Aga Solutions, Inc. 2008 WL 5054694, at *6-7 (E.D.N.Y. Nov. 21, 2008) (granting summary judgment for willful violations of Sections 32 and 43(a) of the Lanham Act based on sale of counterfeit software).

6

Here, the overwhelming and indisputable evidence is that Defendants have imported, manufactured, packaged, offered for sale and sold Counterfeit Merchandise at both retail and wholesale levels through various physical locations (including Gad Abeckaser's home) in Kings and New York County, and both retail sales and wholesale over the Internet. Thus, it is appropriate to grant summary judgment against Defendants for trademark infringement and unfair competition under Sections 32 and 43 (a) of the Lanham Act..

A.     **The Evidence of Counterfeiting and Trademark Infringement is Indisputable**

Motorola seeks summary judgment against Defendants for Counts I and II, its claims for trademark infringement and unfair competition under Sections 32 and 43(a) of the Lanham Act.

To establish a claim of trademark infringement under Section 32 of the Lanham Act, Motorola must produce evidence that the defendant "(1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion. Grunner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993). Similarly, under Section 43(a) of the Lanham Act, Motorola must establish that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Morningside Group Ltd. v. Morningside Capital Group, L.L.C, 182 F.3d 133, 137 (2d Cir. 1999). The elements of both violations are virtually the same (except that Section 32 protects registered marks only). Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 114 (2d Cir. 2006).

Under both Sections 32 and 43(a), Motorola need not prove intent in order to succeed on the issue of liability and procure injunctive relief. See Johnson & Johnson, *supra* at 384. In order to obtain maximum damages, Motorola must prove that Defendants acted willfully,

7

meaning that Defendants had knowledge that their conduct represented infringement, recklessly disregarded this possibility or were willfully blind to the violation. 15 U.S.C. § 1117(c)(2), Hermes v. Kiernan, 2008 U.S. Dist LEXIS 70506 (E.D.N.Y. 2008) (J. Wexler); Tanning Research Laboratories, Inc. v. Worldwide Import & Export, 803 F. Supp. 606, 609-10 (E.D.N.Y 1992) (failure to contact plaintiff and continuing to sell plaintiff's product after receipt of cease and desist letters was willfully blind conduct justifying finding of willful infringement); Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 288-89 (2d Cir. 1999).

### 1.    Plaintiff's Trademarks Are Valid, Protectable Marks.

Through its certificates of registration, pleadings and affidavit, Plaintiff has introduced evidence verifying that it is the owner of United States Trademark Registrations for the Motorola Trademarks. Motorola's trademark registrations alone are prima facie evidence of the validity of the Plaintiff seeks to protect. 15 U.S.C. §1057(b).

### 2.    Defendants Used Counterfeit Copies of the Motorola Marks

As conclusively demonstrated in the Lukasik Declaration and in the merchandise purchased by the NYPD, seized by the NYPD and U.S. Customs and the merchandise voluntarily turned over by Defendants to Motorola, the items bore counterfeit copies of the MOTOROLA and STYLIZED M Design trademarks. Lukasik Dec. ¶14 It is also undisputed that Defendants have, for many months, transacted business in Counterfeit Merchandise. Lukasik Dec. ¶15. Counterfeit Merchandise was sold to the NYPD on multiple occasions and well over $500,000 in Counterfeit Merchandise was seized on September 5, 2007—just one day's inventory for Defendants. Moreover, the more than 62,000 counterfeit packages could be uses to sell over $4,000,000 in Counterfeit Merchandise. Lukasik Dec. ¶16.

### 3. Defendants' Use of the Motorola Marks on Counterfeit Merchandise was Without Motorola's Consent

There is no question that Defendants' activities with respect to Counterfeit Merchandise were without Motorola's consent. Lukasik Dec. ¶12. Motorola sent Gadicell, Inc. a cease and desist letter, which was personally received by Gad Abeckaser. Lukasik Dec. ¶12.

### 4. Defendants' Use of Counterfeit Marks was Likely to Cause Confusion

As a matter of law, defendants' use of counterfeit marks causes confusion. "Courts have noted the purpose of counterfeiting is to "confuse the buying public." In re Vuitton et Fils S.A., 606 F.2d 1 (2d Cir. 1979). The Second Circuit has explained that:

> "[A] likelihood of product confusion exists. The allegedly counterfeit Vuitton merchandise is virtually identical to the genuine items. Indeed, the very purpose of the individuals marketing the cheaper items is to confuse the buying public into believing that it is buying the true article."

606 F.2d at 4.

Usually, courts in the Second Circuit look to the eight-factor test set out in Polaroid Corp. v. Polaroid Elecs. Corp., 287 F.2d 492, 495-96 (2d Cir. 1961) to determine likelihood of confusion. Because this is a counterfeiting case, however, the court nee not "perform the step-by-step examination of each Poloroid factor since counterfeit marks are inherently confusing. Lorillard Tobacco Company, v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 455 (S.D.N.Y 1995), Instead the court "need consider only whether the [products] at issue are, in fact, counterfeit" and whether those products were used—imported, offered for sale and/or sold by Defendants. Id. Since it is without genuine material dispute that each of the Defendants imported, offered for sale and/or sold Counterfeit Merchandise, this court need go no further to find likelihood of confusion.

9

In the event this court chooses to apply the <u>Poloroid</u> factors for determining likelihood of confusion it is not subject to a material dispute that: (1) Motorola has strong marks; (2) Defendants use identical marks on identical products; (3) Defendants sell their products in competition with Motorola in the marketplace; and (4) Defendants intended to use the Motorola marks. Therefore, it is clear that Defendants' conduct causes a likelihood of confusion. <u>Procter & Gamble v. Quality King</u>, 123 F. Supp. 2d 108, 114-15 (E.D.N.Y 2000). Thus, there is no material genuine dispute of fact that Defendants have violated Sections 32 and 43(a) of the Lanham Act.

With respect to Gad Abeckaser's personal liability, a corporate official's personal liability for trademark infringement is established "if the officer is a moving active conscious force behind the Defendant corporation's infringement." <u>Procter & Gamble</u>, *supra* at 117 (citing <u>Monsanto Co v. Haskel Trading, Inc.</u>, 13 F. Supp.2d 349, 354 (E.D.N.Y 1998).

There is no genuine material fact that Gad Abeckaser is a moving force behind the counterfeiting activities and is therefore individually liable. Indeed, Mr. Abeckaser **admitted in his answer that he owns and controls the corporate defendants**. Answer ¶2 ("Defendant Gad Abeckaser, a/k/a Gadi Abeckaser ("Gadi" ) is an individual resident of New York, residing at 1082 E. 29th Street Brooklyn, New York 11210, and owns and controls defendants Gadi's Cell, Inc. d/b/a Gadicell, Inc. and Gadicell, Mobile Cellular, Inc. and upon information and belief, Gadis Inc.").

By definition, as the owner and controller of the corporate Defendants, Mr. Abeckaser was responsible for the companies purchase and sales and was the moving active conscious force behind the corporate defendants infringement. <u>Id.</u> Further, the evidence shows that Mr. Abeckaser: (1) operated Defendants' business in large part from his home address, receiving

shipments of Counterfeit Merchandise there and listing that address on invoices as the location from which sales were made; (2) acted as the salesman on transactions; and (3) signed for the cease and desist letter sent to Gadicell at his home address. This binding admission and undisputed evidence is sufficient to demonstrate Mr. Abeckaser's significant and conscious involvement in the counterfeiting enterprise. <u>Bambu Sales, v. Sultana Crackers</u>, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) (personally authorizing and approving acts of unfair competition that is the basis of the corporation's liability is sufficient to subject the officer to personal liability).

## II.   <u>Motorola is Entitled to a Permanent Injunction</u>

Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)) provides courts with the "power to grant injunctions according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of" Motorola, the owner of registered trademarks. 15 U.S.C. § 1116(a).

Since Motorola has presented undisputable evidence that the Defendants have engaged substantial business transactions in Counterfeit Merchandise, Motorola is entitled to a permanent injunction under Fed R. Civ. P. 65 enjoining Defendants their agents, servants, employees, officers, and all other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from: (1) using Motorola's Trademarks or any marks confusingly similar thereto in connection with the sale of any Counterfeit Motorola Merchandise; (2) manufacturing, distributing, exporting, advertising, promoting, holding for sale or selling any goods, labels, tags, logos, decals, emblems, signs, and other forms of markings, any packaging, wrappers, containers and receptacles, catalogs, price lists, promotional materials and the like bearing a counterfeit copy of any of Motorola's Trademarks; (3) using any counterfeit, copy, or colorable imitation of Motorola's Trademarks in connection with the

11

publicity, promotion, sale, or advertising of Counterfeit Motorola Merchandise; (4) affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent such goods as being those of Motorola when they are not; and (5) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (1) through (4). See, e.g., Phillip Morris USA Inc v Marlboro Express, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005).

### III.    Motorola Is Entitled To Maximum Statutory Damages For Defendants' Willful Conduct.

Section 35 (c) of the Lanham Act (15 USC § 1117(c)) provides that in cases involving counterfeit marks the plaintiff may elect to recover statutory damages.  The purpose of the statutory damages provision in the Lanham Act is because counterfeiters records are frequently inadequate, "making proving actual damages in these cases difficult if not impossible." Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting S. rep. No. 104-177, at 10(1995)); see also Gucci America, Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).  In addition, statutory damages under the Lanham Act are intended to deter future counterfeiting by the defendant in question as well as other potential counterfeiters. Lorillard Tobacco Company, v. Jamelis Grocery, Inc., *supra* at 455.

15 U.S.C. §1117(c) states, in pertinent part:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

(1)     not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just or

(2)     if the court finds that the use of the counterfeit mark was willful not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1) and (2).

In determining the amount of statutory damages, courts have considered a variety of factors, including defendant's profits from infringement, the defendant's willfulness, the size of defendant's counterfeiting operation and the deterrent effect on others. Philip Morris, *supra* at *21.

In this case, there is no question that Defendants were engaged in a substantial business enterprise. Mr. Lukasik observed and reported that Defendants were operating an assembly line and warehouse facilities for creating counterfeit duplications of the Motorola Marks, systematically placing same on, among other things, packaging inserts for headsets and cell phones. Lukasik Dec. ¶7. Documents seized indicated that Defendants generated between $500,000-$1,000,000 in invoices monthly. Finally, Defendants had an inventory of $500,000 in Counterfeit Merchandise and counterfeit packaging that could have led to the sale of more than $5,000,000. Thus it is abundantly clear that Defendants were engaged in a substantial counterfeiting operation. Sara Lee Corporation v. Bags of New York, 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999) (fact that defendants had an in-stock inventory of at least $230,000 in goods and an elaborate production operation meant that defendants' counterfeiting business was substantial).

In addition, there is clear evidence that Defendants' conduct meets the willfulness standard. Mr. Abeckaser received a cease and desist letter from Motorola, but did not reach out to Mr. Lukasik who sent it. Thus, Defendants' conduct was at least willfully blind to the fact that Defendants were selling Counterfeit Merchandise. Tanning Research Laboratories, Inc., *supra* at 609-10. Defendants also received several notifications from U.S. Customs that they were importing Counterfeit Merchandise for sale, and continued to hold Counterfeit Merchandise even after they stipulated to a preliminary injunction. This "string of warning signs" was ignored, showing at the least Defendants acted with willful blindness and at worst, a bold contempt of the law. Gucci America, Inc, *supra*, 315 F. Supp. 2d at 521 (finding willful infringement even though the defendant received assurances from his source that the products were genuine). Defendants knowingly took the risk of continuing their business practices after they knew they were receiving and selling Counterfeit Merchandise. Significantly, it is undisputed that Defendants were **printing their own packaging using the Motorola Marks after receiving a cease and desist letter.** This is the definition of intentional, knowing infringement, justifying a maximum statutory award. Id; see also Phillip Morris USA Inc. *supra* at *28 (awarding $1,000,000 per counterfeit mark, for a total of $4,000,000 because of size of potential profit and the need for substantial deterrent); Nike, Inc. v. Top Brand, 2006 U.S. Dist. LEXIS 76543, at *25 (S.D.N.Y Feb. 27, 2006) (awarding maximum statutory damages of $12,000,000, $5,000,000, $4,000,000 and $17,000,000 because of the size of defendants' business enterprise, the willfulness of the conduct, and defendants' behavior in litigation[1]).

---

[1] See also Section IV *infra*, which discusses Defendants' behavior.

Based on, among other things, the willfulness of Defendants' conduct, the size of Defendants' business operations and the need for deterrence, Motorola submits that the maximum statutory damages should be awarded.

In determining the number of statutory awards, a court must determine the number of marks and types of goods involved. By "type" of goods sold, the Lanham Act is intended to allow one statutory award for each separate functional type of product counterfeited by Defaulting Defendants. See Chanel, Inc. v. French, 2006 U.S. Dist. LEXIS 93297, at *11 (S.D. Fla. Dec. 22, 2006); ("[i]f the Court takes handbags and sunglasses as two different types of goods, and there are seven different trademarks at issue being used with both types of goods, then the Plaintiff has committed, apropos this suit, fourteen willful trademark violations under 15 U.S.C. § 1117(c)").

In this case, Motorola is entitled to an award of eight (8) statutory damages, because it can demonstrate that Defendants sold: (a) cellular headsets, each bearing one counterfeit mark; (b) cellular telephones, each bearing two counterfeit marks; (c) cellular telephone chargers, each bearing one (1) counterfeit mark; (d) mobile phone tools software CD ROMS, each bearing two counterfeit marks; and (e) counterfeit packaging inserts, each bearing two counterfeit marks. Since each of these goods function differently, Motorola is entitled to separate statutory damages.

Therefore, it is respectfully submitted that Motorola is entitled to summary judgment, as against Defendants, on Counts I and II of the Complaint and an award of statutory damages pursuant to 15 U.S.C. §1117(c)(1) and (2) in an amount to be determined by the Court. With regard to the amount of the statutory damages to be awarded, Motorola respectfully submits to the Court that Defendants' behavior rises to the level of willful and that the maximum amount,

per counterfeit mark per type of good, should be awarded, to wit, $16,000,000 for the eight (8) counterfeit marks.

## IV.    Motorola is Entitled to its Costs and Reasonable Attorneys' Fees

Under the Lanham Act, a court may in its discretion award costs and reasonable attorneys' fees. See 15 U.S.C. § 1117. Generally, in trademark infringement cases, an award of attorney's fees is warranted where infringement is willful. Kepner-Tregoe, *supra*, at 289. While there has been some disagreement among courts as to whether or not a plaintiff that obtains an award of statutory damages should also receive an award of attorney's fees (rather than have the statutory damage award take attorney's fees into consideration) courts have found an award of both statutory damages and attorney's fees appropriate in "exceptional" cases. See discussion in Nike, *supra* (analyzing cases and ultimately awarding fees).

In this case, Motorola is entitled to its reasonable attorney's fees because of Defendants' willful conduct (including the fact that Defendants held Counterfeit Merchandise even after a preliminary injunction was entered), as well as the manner in which this case has been litigated by Defendants, which clearly makes this case exceptional.   On many occasions in this case, Defendants' purported counsel, Mr. Meir Mosier, failed to appear for conferences and caused confusion as to which attorney was representing Defendants.   On another occasion, **Mr. Abeckaser failed to appear despite a court order requiring him to appear**, and Mr. Edward Dowling (the actual counsel of record, although at all times he has insisted that he is merely "of counsel" to Mr. Mosier) was unsure of the scope of his representation of Defendants and was reprimanded by Magistrate Júdge Gold.   The result of all of these shenanigans was that Motorola spent far more on legal fees on this case than it would have had to absent the improper conduct

of Defendants, and, therefore, Motorola submits that it is entitled to receive an award of its reasonable legal fees.

## CONCLUSION

Motorola respectfully submits that it has fully demonstrated that there is no genuine material fact in dispute as to Defendants' engagement in trademark infringement and unfair competition through its substantial business activities in counterfeit Motorola merchandise. Therefore, the Court should grant: (i) a permanent injunction against Defendants enjoining the manufacture, importation, exportation, distribution, offer of sale and sale of Counterfeit Merchandise and Defendants' use of the Motorola's Trademarks without Plaintiff's authorization; (ii) judgment against Defendants, jointly and severally, in the amount of $16,000,000; (iii) an award to Motorola of its reasonable attorneys' fees and costs; and (iv) such other and further relief for Motorola that the Court deems just and appropriate.

Dated:      New York, New York
           January 21, 2009

Respectfully submitted,
SEYFARTH SHAW LLP

By: _____
     Eddy Salcedo, Esq. (ES-3391)
     620 Eighth Avenue
     New York, New York 10018-1405
     Telephone: (212) 218-5500

     Bart A. Lazar, Esq. (BL-7984)
     131 S. Dearborn Street
     Suite 2400
     Chicago, Illinois 60603
     Telephone: (312) 460-5986

     *Attorneys for Plaintiff Motorola, Inc.*