UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Motorola, Inc.,

                    Plaintiff,              07-CV-3963
                                            (CPS)(SMG)

    - against -

Gad Abeckaser a/k/a Gadi Abeckaser,        MEMORANDUM OPINION
Gadi's Cell, Inc. d/b/a Gadicell, Inc.,    AND ORDER
and Gadicell, Gadis Inc., Mobile
Cellular, Inc., and various John Does,
Jane Does and ABC Companies,

                    Defendants.

-----------------------------------------X

SIFTON, Senior Judge.

        Plaintiff Motorola, Inc. brings this trademark action

against defendants Gad Abeckaser a/k/a Gadi Abeckaser

("Abeckaser"); Gadi's Cell, Inc. d/b/a Gadicell, Inc. and

Gadicell; Gadis Inc.; Mobile Cellular, Inc.; and various John

Does, Jane Does and ABC Companies.  Specifically, plaintiff

alleges that defendants engaged in: (1) infringement of

plaintiff's registered trademarks in violation of Section 32 of

the Lanham Act, 15 U.S.C. § 1114 (Count I); (2) false designation

of origin in violation of Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a) (Count II); and (3) unfair competition under New

York State common law (Count III).  Plaintiff's claims arise out

of defendants' sale of allegedly counterfeit merchandise bearing

trademarks that are allegedly unauthorized copies of plaintiff's

trademarks.

Plaintiff moves for partial summary judgment on Counts I and II pursuant to Rule 56 of the Federal Rules of Civil Procedure, as well as for injunctive relief, damages, attorney's fees, and costs. For the reasons set forth below, plaintiff's motions are granted as to liability on Counts I and II and injunctive relief, and denied as to damages, attorney's fees, and costs.

**BACKGROUND**

The following facts are taken from the parties' affidavits and the exhibits attached thereto, and plaintiff's Local Rule 56.1 statement of undisputed facts ("Pl.'s Stmt."). Because defendants have not submitted a corresponding Local Rule 56.1 statement, in accordance with Local Rule 56.1(c), plaintiff's Local Rule 56.1 Statement is deemed admitted for the purposes of this motion to the extent the allegations of fact recited therein are supported by the record. *Larsen v. JBC Legal Group*, P.C., 533 F.Supp.2d 290, 295 (E.D.N.Y. 2008).

Plaintiff Motorola is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Illinois. Pl. Stmt. ¶ 1. Defendant Abeckaser is an individual residing in Brooklyn, New York, who owns and controls defendants Gadi's Cell, Inc. d/b/a Gadicell, Inc., Gadicell, Mobile Cellular, Inc. and Gadis Inc. *Id.* ¶ 2. Defendants Gadi's Cell, Inc. and Mobile Cellular, Inc. are New York corporations doing business in Brooklyn, New York, and

defendant Gadi's Inc. is a New York corporation with a New York
Department of State Process address in Brooklyn, New York. *Id.*
¶¶ 3-5.

For many years, plaintiff has used the word trademark
MOTOROLA® and design trademark comprised of a stylized M® design
(the "Motorola trademarks") continuously on, and in connection
with, the design, manufacture, and sale of, *inter alia*, mobile
communication devices and accessories in interstate and
intrastate commerce. *Id.* ¶ 6. The Motorola Trademarks are
registered on the Principal Register of the United States Patent
and Trademark Office ("PTO") for multiple goods, including the
following: (1) MOTOROLA, registered June 27, 1981, No. 717,485 in
International Class 9; (2) STYLIZED M Design, registered February
4, 1992, No. 1,674,103 in International Class 9; and (3) MOTOROLA
and STYLIZED M Design, registered March 24, 2992, No. 1,680,185
in International Class 9. *Id.* ¶ 7.

Plaintiff actively promotes its trademarks and trade name,
devoting substantial time, effort and resources to promoting the
Motorola Trademarks and Motorola products. Declaration of David
Lukasik dated September 28, 2007 ("Lukasik Decl.") ¶ 5. It
maintains strict control over its products and advertising, which
prominently feature the Motorola Trademarks. *Id.* Merchandise
designed, manufactured and/or sold by plaintiff bearing one or
more of the Motorola Trademarks (the "Authorized Merchandise")

has been advertised and sold throughout the United States and within the State of New York and this District. Pl.'s Stmt. ¶ 10. Consumers understand and recognize that Motorola-branded products come from plaintiff and are of good quality, technology and design. Lukasik Decl. ¶ 5.

On March 6, 2007, United States Customs and Border Protection ("U.S. Customs") sent a notice to defendants that U.S. Customs had seized merchandise imported by defendants which bore counterfeit Motorola Trademarks. Pl.'s Stmt. ¶ 11. The notice specifically referenced the seizure of: 1029 manuals, 1087 boxes, 100 liners, 99 power cords, 99 data cables and 99 CD-Roms of software, all bearing counterfeit Motorola Trademarks. *Id.* ¶ 12.

On May 23, 2007, plaintiff sent a cease-and-desist letter to defendants, directing them immediately to refrain from transacting business in merchandise bearing counterfeit Motorola Trademarks, turn over all such merchandise to Motorola, and disclose business information and documents relating to the merchandise. *Id.* ¶ 14; Lukasik Decl. Ex. D (copy of cease-and-desist letter). Defendant Abeckaser personally signed a receipt for the cease-and-desist letter. Pl.'s Stmt. ¶ 15.

Following the notice from U.S. Customs and the cease-and-desist letter, on June 13, 2007 and August 30, 2007, private investigators acting on plaintiff's behalf and members of the New York City Police Department purchased several items from

defendant Gadi's Cell, Inc. d/b/a Gadicell, Inc.  *Id.* ¶ 16.
Based on an examination of the products, David Lukasik, Manager
of Quality for the MobileMe Division of plaintiff, determined
that the products and packaging were counterfeits.[1]  *Id., see
also* Lukasik Decl. ¶¶ 1, 6.  Mr. Lukasik made his determination
based on the inferior quality of the headsets and packaging.
Lukasik Decl. ¶ 6.  He noted that the stylized M® design mark had
been poorly affixed to the product; that the materials used for
the headsets were not consistent with the materials used in the
fabrication of the genuine product; and that the printing of
words and images on the product and packaging were of inferior
quality and inconsistent with the fabrication of genuine products
and packaging.  *Id.*

    According to records submitted by defendants,[2] between
December of 2006 and June of 2007, defendants purchased over
400,000 units of allegedly genuine Motorola merchandise from

_____

    [1] Mr. Lukasik describes his qualifications to assess the authenticity of
Motorola products as follows: "As part of my responsibilities for Motorola [as
Manager of Quality for the MobileMe Division of Motorola, Inc.], I am familiar
with the product and packaging attributes of genuine MOTOROLA© products,
including cell phones and headsets bearing the word trademark MOTOROLA© and
design trademark comprised of a STYLIZED M Design® ('Motorola Trademarks')."
Lukasik Decl. ¶¶ 1-2.

    [2] Defendants have not submitted any affidavits or exhibits that comply
with Federal Rule of Civil Procedure 56(e), which requires that affidavits
submitted in opposition to summary judgment be based on personal knowledge,
and that attachments thereto must be sworn or certified.  Instead, defendants
have submitted an affidavit signed by their attorney, and the attached
exhibits are neither sworn nor certified.  Defendants' submissions are
therefore insufficient to defeat summary judgment.  *See, e.g., Randell v.
U.S.*, 64 F.3d 101, 109 (2d Cir. 1995).  For the sake of completeness, I
include relevant facts from defendants' submissions here, but do not rely upon
them.

Motorola's online wholesale auction site, "Motorola Wholesale
Private Auctions."[3]  *See* Declaration of Mark Jay Heller dated
March 4, 2009 ("Heller Decl."), Ex. 3 (email receipts from
"Motorola Wholesale Private Auction" reflecting, *inter alia*, the
type and quantity of Motorola merchandise purchased at auction,
the amount paid and the date of purchase).  According to counsel
for defendants, merchandise purchased from Motorola Wholesale
Private Auctions is "refurbished, 'end of life' stock (last
available units of a model), discontinued units, customer return
stock, irregular or defective units (sold 'as is'), as well as
accessories and parts for these units[.]"  Heller Decl. ¶ 13; *see
also id.* Ex. 2 (email from lashonda.kelly@motorola.com to
defendant Abeckaser referencing defendant's purchase of 12,763
v220 phones that were "refurbished by Motorola" and noting, *inter
alia*, that some products are sold "as is" and that "[m]any of our
auctions are for the last available units of a model").
Defendants have also submitted evidence that during the same time
period, they purchased allegedly genuine Motorola merchandise
from retailers allegedly authorized by Motorola to sell genuine
Motorola merchandise.  *Id.* Ex. 6 (copy of invoices for allegedly
genuine Motorola products purchased by defendants from retailers

---

[3] According to an exhibit submitted by defendants, the "Motorola
Wholesale Private Auctions" site affords "registered customers the opportunity
to stock up on high quality Motorola products at unbeatable prices.  Our
listings typically happen once per month."  Def.'s Mem. in Opp'n Ex. 1 (copy
of homepage), *available at* http://motorolawholesale.channeladvisor.com (last
visited Mar. 18, 2009).

such as PCS Wireless, Prime 1 Enterprises, Unified Distributors, and WinWin International Trading Limited).

On September 5, 2007, based on, *inter alia*, the allegedly counterfeit merchandise purchased by private investigators in June and August 2007, search warrants were issued and thereafter executed at defendants' two Brooklyn business locations. Pl.'s Stmt. ¶ 17. At these locations, the New York City Police Department confiscated more than 4,000 headsets and 360 cell phones bearing or packaged with allegedly counterfeit duplications of the Stylized M® Design and Motorola® word marks, and more than 62,000 allegedly counterfeit packaging inserts bearing allegedly counterfeit duplications of the Stylized M® Design and Motorola® word marks. *Id.* ¶ 18. The retail value of the allegedly counterfeit merchandise seized was in excess of $500,000. *Id.* ¶ 19. If all of the allegedly counterfeit packaging inserts were affixed to and sold with cellular telephone headsets, the retail value of the products would be more than $5,000,000. *Id.* ¶ 20.

During the execution of the search warrants, the New York City Police Department and David Lukasik observed that defendants were operating warehouse facilities and an assembly line, which, they concluded, were used to create counterfeit duplications of the Motorola Trademarks and to place the same on, *inter alia*, packaging inserts for headsets and cell phones, and thereafter to

package the headsets and cell phones. Pl.'s Stmt. ¶ 21.
Defendants' sales records, obtained during the execution of the
search warrants, show that defendants issued invoices for
$1,178,590 in March 2007, a period of time when defendants were
selling allegedly counterfeit Motorola merchandise. *Id.* ¶ 23.

On September 5, 2007, two employees of defendants were
arrested for the sale of counterfeit merchandise. *Id.* ¶ 24.

Plaintiff commenced the instant action on September 21,
2007, and immediately sought an *ex parte* temporary restraining
order and preliminary injunction restraining defendants' assets.
Declaration of Eddy Salcedo dated January 21, 2009 ("Salcedo
Decl.") ¶ 30; *see also* Compl. By stipulation dated October 3,
2007, plaintiff withdrew its initial motion and defendants agreed
to refrain from using the Motorola Trademarks in connection with
any counterfeit merchandise.[4] Pl.'s Stmt. ¶ 25; Salcedo Decl.
Ex. M (copy of stipulation).

On October 30, 2007, plaintiff conducted the inspection of
defendants' business locations called for in the October 3, 2007

---

[4] Specifically, defendants agreed, *inter alia*, to: (a) refrain from, in
any way, using the Motorola Trademarks or any reproduction, counterfeit, copy
or colorable imitation of the Motorola Trademarks in connection with the
manufacture, distribution, importation, exportation, advertising, offer for
sale and/or sale of merchandise not the genuine products of Motorola; (b)
refrain from shipping, delivering, holding for sael, distributing, returning,
transferring or otherwise moving, storing, or disposing of in any manner
apparel or other items falsely bearing the Motorola Trademarks, or any
reproduction, counterfeit, copy or colorable imitation of the same; and (c)
provide plaintiff with complete access to all warehouses, store locations,
storage locations and/or offices for the inspection of defendants' business
records and to inventory of merchandise. Pl.'s Stmt. ¶ 25; Salcedo Decl. Ex.
M (copy of stipulation).

stipulation. Pl.'s Stmt. ¶ 26. During the inspection, the
following types of merchandise, bearing allegedly counterfeit
duplications of the Stylized M® Design and Motorola® word marks
were found: (1) packaging inserts; (2) "Mobile Phone Tools" CD-
Roms; and (3) quick-start cellular phone chargers. *Id.* ¶ 27.

On or about August 12, 2008, defendant Abeckaser was
indicted before the Queens County Supreme Court on charges of
trademark counterfeiting. Heller Decl. ¶ 34; *see id.* Ex. 7 (copy
of indictment). Counsel for defendants states that defendant
Abeckaser was subsequently arrested and arraigned and that
criminal proceedings against him are ongoing. *Id.* ¶¶ 34-35.

## DISCUSSION

I. <u>Motion for Partial Summary Judgment</u>

A. *Summary Judgment Standard*

A court must grant a motion for summary judgment if the
movant shows that "there is no genuine issue as to any material
fact" and that "the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56(c). Summary judgment is
appropriate "[w]hen the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party."
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986). "An issue of fact is genuine if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*,

320 F.3d 110, 117 (2d Cir. 2003).  A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987).  In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact.  Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.  *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990).  Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).  In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394,

398 (2d Cir. 2000).

B.    *Lanham Act Claims for Trademark Infringement and False Designation of Origin*

1.    *Standard for Lanham Act Claims*

Section 32 of the Lanham Act prohibits the use in commerce, without consent, of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion with plaintiff's registered trademarks.  15 U.S.C. § 1114(1)(a). Section 43(a) prohibits similar conduct, although it is not limited to registered trademarks, and deems liable for false designation of origin:

> Any person who . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1); *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 155 (2d Cir. 2002).  Liability is established under both Sections 32 and 43(a) of the Lanham Act if a plaintiff can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are "likely to cause confusion."  *Arrow Fastener v. Stanley Works,* 59 F.3d 384, 390 (2d Cir. 1995).

2. *Validity of Plaintiff's Trademarks*

In this case, plaintiff's certificates of registration with the PTO for the Motorola Trademarks are "prima facie evidence that the mark[s] [are] registered and valid (i.e. protectible), that the registrant owns the mark[s], and that the registrant has the exclusive right to use the mark[s] in commerce." *Lane Capital Mgmt, Inc. v. Lane Capital Mgmt, Inc.,* 192 F.3d 337, 345 (2d Cir. 1999); 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark"). Defendants have not presented any evidence to rebut this presumption of validity. Therefore, plaintiff has established that its marks are valid and entitled to protection under the Act.

3. *Likelihood of Confusion*

In considering the likelihood of confusion, district courts generally apply eight nonexclusive factors, known as the *Polaroid* factors:

> (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers.

*Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 743 (2d Cir. 1998) (citing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961)). However, in cases involving

counterfeit marks, "the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Martal Cosmetics, Ltd. v. Int'l Beauty Exchange Inc.*, No. CV-01-7595, 2007 WL 895697, at *15 (E.D.N.Y. Mar. 22, 2007) (citing *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003)). Therefore, the Court "need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue here are, in fact, counterfeit, and whether Defendants sold those items." *Id.* (citing *Gucci*, 286 F.Supp.2d at 287).

      i. *Plaintiff's Evidence of Counterfeit Goods*

Plaintiff has submitted evidence in the form of a declaration from David Lukasik, Manager of Quality for the MobileMe Division of Motorola, that defendants sold counterfeit goods to undercover investigators and that other counterfeit goods were subsequently seized from defendants. Mr. Lukasik, who states that he is "familiar with the product and packaging attributes of genuine MOTOROLA© products," made his determination that the goods were counterfeit based on the inferior quality of the products and their packaging, the poor affixation of the marks to the products, the inconsistency of the materials used to make the products with the materials used to make genuine products, and the inconsistency of the printed words and images

on the products and their packaging with the fabrication of
genuine products and packaging.

    ii. *Defendants' Opposition to Plaintiff's Evidence*

Defendants, however, deny that any of the goods in question
were counterfeit, and object to Mr. Lukasik's determination that
the goods were counterfeit on three grounds.  First, they
maintain that Mr. Lukasik has not adequately set forth his
qualifications for making this determination, and that his
"familiarity" with genuine Motorola products does not suffice to
qualify him as an expert on counterfeit Motorola goods.  Second,
defendants state that they have not had an opportunity to examine
the seized goods, and argue that they are therefore unable to
oppose Mr. Lukasik's determination with their own expert's
opinion.  Third, they argue that evidence that they purchased
authentic Motorola goods refutes Mr. Lukasik's determination that
goods sold by or seized from defendants were counterfeit.

With regard to defendants' first argument, I find that Mr.
Lukasik is qualified to testify as an expert concerning the
authenticity of Motorola merchandise.  To be considered on
summary judgment, expert testimony must be admissible.  *Raskin v.
Wyatt Co.,* 125 F.3d 55, 66-67 (2d Cir. 1997).  The Federal Rules
of Evidence permit opinion testimony by experts when the witness
is "qualified as an expert by knowledge, skill, experience,
training, or education," and "if scientific, technical or other

specialized knowledge will assist the trier of fact to understand the evidence or to determine the fact in issue." Fed. R. Evid. 702. It is a "well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). District courts, however, have a "gatekeeping" function under Rule 702, and are charged with ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Thus, under Rule 702, before allowing expert testimony, the district court must determine: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact. *See Nimely*, 414 F.3d at 396-97.

Rule 702 provides that an expert witness may be qualified to testify through knowledge, skill, experience, training, or education. Any one of these five forms of qualifications will satisfy the rule. *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp.2d 457, 458 (S.D.N.Y. 2007) (citing 4 Jack B. Weinstein, Weinstein's Federal Evidence § 702.04[1][c] (2d ed. 2006)). Here, Mr. Lukasik is qualified to testify as an expert by virtue of his knowledge and experience. As a quality control manager for plaintiff, it is part of Mr. Lukasik's job to assess Motorola

products for compliance with Motorola quality standards. By virtue of the knowledge and experience gained in the course of performance of his professional duties, Mr. Lukasik is qualified to assess the authenticity of putative Motorola products. Likewise, Mr. Lukasik's method of assessing product authenticity, which includes comparing alleged counterfeit products with genuine products and analyzing differences between the materials used to manufacture the products, the affixation of trademarks to and the appearance of words and images on the products, and the products' packaging, is reliable and based on observable facts. Other courts have reached similar conclusions concerning the qualifications and methods of quality control managers who testify as experts in trademark infringement cases. *See, e.g.*, *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 285, 288 (S.D.N.Y. 2003) (accepting expert testimony from quality control manager for Gucci that goods at issue were counterfeit). Finally, there is no question that Mr. Lukasik's opinion concerning the authenticity of defendants' goods would assist the trier of fact in determining whether the goods at issue are counterfeit. Accordingly, Mr. Lukasik's testimony is admissible.

Defendants' second argument in opposition to Mr. Lukasik's testimony is easily disposed of. Defendants complain that they have not had an opportunity to examine the goods in question. The goods were sold by or seized from defendants during the

months of June through September of 2007.  There is no evidence
that defendants requested to examine the goods while discovery
was in process, nor is there any evidence that they moved to
reopen discovery after its closure in November of 2008.
Defendants' objection at this late date, in a submission in
opposition to a motion for summary judgment, is untimely.

Finally, defendants argue that evidence that they purchased
authentic Motorola goods from Motorola itself, as well as from
licensed Motorola retailers, refutes Mr. Lukasik's testimony.  As
previously noted, defendants' evidence is not before me in
admissible form.  *See supra* n.2.  Further, even if defendants'
evidence were admissible, it does not refute Mr. Lukasik's
determination that the goods sold by and seized from defendants
were counterfeit.  That defendants may at some time have
purchased authentic Motorola goods is not inconsistent with Mr.
Lukasik's conclusion that the goods actually sold to undercover
officers and seized by the NYPD were, in fact, counterfeit.

Mr. Lukasik's expert opinion is admissible, and defendants
have submitted no evidence, admissible or otherwise, that refutes
it.  On the strength of Mr. Lukasik's testimony alone, no
reasonable juror could conclude that defendants did not sell
counterfeit goods.  Therefore, plaintiff has shown that
defendants' actions caused a likelihood of consumer confusion,
and therefore, has established liability under Sections 32 and

43(a) of the Lanham Act.  Accordingly, plaintiff's motion for
summary judgment as to Counts I and II of the complaint is
granted.

II.  <u>Injunctive Relief</u>

Plaintiff seeks a permanent injunction directing defendants
to refrain from future infringement of its marks.[5]  Section 34(a)
of the Lanham Act provides courts with the "power to grant
injunctions, according to the principles of equity and upon such
terms as the Court may deem reasonable, to prevent the violation
of any right of the registrant of a mark registered in the Patent
and Trademark Office[.]"  15 U.S.C. § 1116(a).  To obtain a
permanent injunction, plaintiff must establish that (1) absent
injunctive relief, it will suffer irreparable harm, and (2)
actual success on the merits.  *Victoria Cruises, Inc. v.
Changjiang Cruise Overseas Travel Co.*, No. 03-CV-3146, 2008 WL

---

[5] Specifically, plaintiff seeks "a permanent injunction . . . enjoining
Defendants[,] their agents, servants, employees, officers, and all other
persons in active concert or participation with them who receive actual notice
of the injunction by personal service or otherwise, from: (1) using Motorola's
Trademarks or any marks confusingly similar thereto in connection with the
sale of any Counterfeit Motorola Merchandise; (2) manufacturing, distributing,
exporting, advertising, promoting, holding for sale or selling any goods,
labels, tags, logos, decals, emblems, signs, and other forms of markings, any
packaging, wrappers, containers and receptacles, catalogs, price lists,
promotional materials and the like bearing a counterfeit copy of any of
Motorola's Trademarks; (3) using any counterfeit, copy or colorable imitation
of Motorola's Trademarks in connection with the publicity, promotion, sale, or
advertising of Counterfeit Motorola Merchandise; (4) affixing, applying,
annexing, or using in connection with the sale of any goods, a false
description or representation, including words or other symbols tending to
falsely describe or represent such goods as being those of Motorola when they
are not, and (5) assisting, aiding or abetting any other person or business
entity in engaging in or performing any of the activities referred to in
paragraphs (1) through (4)."  Pl.'s Mem. at 11-12.

5435886, at *8 (E.D.N.Y. Dec. 31, 2008) (citing, *inter alia*, *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).  Plaintiff must also show the threat of a continuing violation in order to obtain permanent injunctive relief.  *Id.* (citing, *inter alia*, *Boisson v. Banian Ltd.*, 280 F.Supp.2d 10, 15 (E.D.N.Y. 2003)).

As previously discussed, plaintiff has established success on the merits of its claims in Counts I and II.  Moreover, in this Circuit, "proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." *Brennan's Inc. v. Bennan's Rest.,* 360 F.3d 125, 129 (2d Cir. 2004); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir. 1997).  Plaintiff has established a threat of continuing infringement by defendants by presenting evidence that defendants possess an assembly line and warehouse facilities for creating counterfeit duplications of the Motorola Trademarks, which in the past have been used to manufacture counterfeit Motorola goods.  Absent injunctive relief, it is likely that defendants will continue to use these facilities to manufacture counterfeit goods.  Accordingly, plaintiff is entitled to a permanent injunction, which will be entered when all claims against all parties have been disposed of.  *C.f.* Rule 54(b) of the Federal Rules of Civil Procedure.

III. <u>Damages</u>

Plaintiff seeks an award of $16,000,000 in statutory damages pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).  Section 35(c) of the Lanham Act provides as follows:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services[.]

15 U.S.C. § 1117(c).  Congress added the statutory damages provision of the Lanham Act in 1995 because "counterfeit[ers'] records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult if not impossible."  *Microsoft Corp. v. Computer Care Center, Inc.*, No. 06-CV-1429, 2008 WL 4179653, at *8 (E.D.N.Y. Sept. 10, 2008) (quoting, *inter alia*, S.Rep. No. 104-177, at 10 (1995)).  A plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold[.]"  15 U.S.C. § 1117 (c)(1).  If the Court finds that "the use of the counterfeit mark was willful," then the plaintiff may recover "not more than $2,000,000 per counterfeit mark per type of goods or services sold[.]"  15 U.S.C. § 1117(c)(2).

"The standard for willfulness is 'whether the defendant had knowledge that [his] conduct represented infringement or perhaps

recklessly disregarded the possibility.'" *Kepner-Treqoe, Inc. v.*
*Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (quoting *Twin Peaks*
*Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d
Cir. 1993)).  Although courts are generally reluctant to dispose
of a claim on summary judgment when mental state is at issue, it
is permissible to do so where, as here, there are sufficient
undisputed material facts on the record to make the question
appropriate for summary judgment. *See Resource Developers, Inc.*
*v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141
(2d Cir. 1991).

Defendants argue that their actions were not willful because
they did not know the merchandise sold by and seized from them
was counterfeit.  In support of their argument, defendants again
refer to evidence not presented in admissible form showing that
they purchased genuine Motorola merchandise from legitimate
sources.  While plaintiff concedes that defendants' evidence
"could be relevant to whether or not Defendants' conduct was
willful," plaintiff points out that defendants received notices
of seizure of counterfeit goods from the United States Customs
office, as well as a cease-and-desist letter from plaintiff,
before defendants sold counterfeit goods to undercover officers
and counterfeit goods were seized at defendants' place of
operation.  Even if defendants did not know that the goods they
sold following receipt of the customs notices and cease-and-

desist letter were counterfeit, which appears doubtful from the record, no reasonable juror could conclude that defendants did not at the very least recklessly disregard the possibility that the goods were counterfeit. Accordingly, no genuine issue of fact exists as to defendants' willful infringement of plaintiff's marks.

In assessing statutory damages pursuant to Section 35(c) of the Lanham Act, the court must determine the number of marks and types of goods sold as counterfeit merchandise. One statutory award is allowed per mark per functional type of product counterfeited. *See* 15 U.S.C. § 1117(c); *Chanel, Inc. v. French*, No. 05-61838-CIV, 2006 WL 3826780, at *4 (S.D.Fla. Dec. 22, 2006) ("If the Court takes handbags and sunglasses as two different types of goods, and there are seven different trademarks at issue being used with both types of goods, then the Plaintiff has committed, apropos this suit, fourteen willful trademark violations under 15 U.S.C. § 1117(c)"). Plaintiff seeks the maximum statutory award of $16,000,000 for defendants' sale of (1) cellular headsets, each bearing one counterfeit mark; (2) cellular telephones, each earing two counterfeit marks; (3) cellular telephone chargers, each bearing one counterfeit mark; (4) mobile phone tools software CR-Doms, each bearing two counterfeit marks; and (5) counterfeit packaging inserts, each bearing two counterfeit marks. Pl.'s Mem. at 15.

The district court has broad discretion in determining the amount of statutory damages to award. *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986). Although Section 1117(c) "does not provide guidelines for courts to use" in determining an appropriate statutory damages award, "courts have found some guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides for statutory damages for willful infringement." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) (citations omitted). Under the Copyright Act, courts look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986).

Upon consideration of these factors with respect to the case at bar, I find that issues of fact exist concerning the amount of statutory damages to which plaintiff is entitled. First, a factual issue exists as to the amount of profits defendants gained as a result of their infringing activities. Defendants

have submitted evidence, albeit in inadmissible form, showing that at least some of the products in their inventory for sale were genuine, as they were purchased from an allegedly legitimate Motorola wholesale website or from authorized retailers. It is unclear at this stage how many counterfeit goods defendants sold, and what percentage of the total goods defendants sold were counterfeit. Similarly, issues of fact exist as to plaintiff's lost revenues and the value of plaintiff's marks. Plaintiff has failed to provide the Court with evidence regarding either of these factors. Accordingly, the amount of statutory damages to which plaintiff is entitled cannot be determined on summary judgment, and plaintiff's motion with respect to statutory damages is denied.

IV.   <u>Attorney's Fees and Costs</u>

Finally, plaintiff moves for attorney's fees and costs pursuant to Section 35 of the Lanham Act. Under Section 35(a), a plaintiff who establishes infringement of a registered mark or false designation of origin is entitled to "the costs of the action," and in "exceptional cases," attorney fees. 15 U.S.C. § 1117(a). Willful infringement generally renders a case "exceptional" and accordingly supports an award of attorney's fees under section 35(a). *See Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94, 95 (2d Cir. 1981); *Springs Mills, Inc. v. Ultracashmere House Ltd.*, 724 F.2d 352, 357 (2d Cir.

1983).

Here, plaintiff has established both infringement of its registered marks (Claim I) and false designation of origin (Claim II). As set forth *supra*, I have already determined that no material issue of fact exists as to the willfulness of defendants' infringement. However, plaintiff has not submitted any evidence as to the amount of attorney's fees and costs to which it is entitled. Therefore, issues of fact exist as to the amount of attorney's fees and costs to which plaintiff is entitled, and accordingly, plaintiff's motion is denied with respect to attorney's fees and costs.

### CONCLUSION

For the reasons set forth above, (1) plaintiff's motion for partial summary judgment is granted as to liability on Claims I and II; (2) plaintiff's motion for a permanent injunction is granted; and (3) plaintiff's motion is denied with respect to damages, attorney's fees, and costs. The Clerk is directed to transmit a copy of the within to all parties and to the Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, New York
          April 8, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge